UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------X

ROOT BROTHERS FARMS,                :

                    Plaintiff,      :    05 Civ. 10863 (LBS)(HBP)

        -against-                   :    OPINION
                                         AND ORDER
PETER MAK, a/k/a "Peter Mac," WAN   :
HING NOODLE, INC. and NEW MAK'S
NOODLE GROUP, INC., d/b/a "New      :
Mak's Noodle, Inc."
                                    :
                    Defendants.
                                    :
----------------------------------X

        PITMAN, United States Magistrate Judge:


I.   Introduction


        Defendants move to recover sanctions in the amount of

$8,387.00 against plaintiff's counsel, Bruce Levinson, Esq. or

against plaintiff, pursuant to 28 U.S.C. § 1927 and the inherent

powers of the court.  Plaintiff cross-moves for an award of

sanctions in an unspecified total amount against defendants and

their counsel, David J. Hoffman, Esq. pursuant to Federal Rules

of Civil Procedure Rules 11 and 30, 28 U.S.C. § 1927 and the

inherent powers of the court.

        For the reasons set forth below, defendants' motion is

denied in all respects, and plaintiff's motion is granted in part

and denied in part.

II.   <u>Facts</u>

Defendants' motion arises from the dismissal of plaintiff's complaint for lack of subject matter jurisdiction  under the Perishable Agricultural Commodities Act, 7 U.S.C. §§ 499a-499t, ("PACA").

In brief, plaintiff alleged that on August 6, 2003 defendants entered into a contract to purchase from plaintiff wholesale amounts of cabbage.  Pursuant to that contract, plaintiff, between December 3, 2004 and June 19, 2005, delivered to defendants approximately one million pounds of unprocessed cabbage.  Plaintiff alleged that despite repeated demands, defendants failed to pay the purchase price of the cabbage, namely $76,126.13 (Amended Compl. at ¶¶ 6, 7).

Plaintiff's initial complaint, filed December 30, 2005, and amended complaint, filed March 31, 2006, alleged federal jurisdiction based on PACA § 5(c)(5), 7 U.S.C. § 499e(c)(5); 28 U.S.C. § 1331 and 28 U.S.C. § 1332 (Compl. at ¶ 1 and Amended Compl. at ¶ 1).  Plaintiff's complaint and amended complaint alleged that plaintiff and defendant corporations, at the time of the transactions at issue, were licensed dealers under PACA and engaged in sales of wholesale produce in interstate commerce (Compl. at ¶¶ 3, 4, Amended Compl. at ¶¶ 3, 4).  The complaints further alleged the sale and non-payment described above.  The

2

complaints then went on to claim that "at the time of receipt of the produce, plaintiff became a beneficiary in a statutory trust designed to assure payment to produce suppliers. . . .  Plaintiff preserved its interest in the PACA trust in the amount of $76,126.13 and remains a beneficiary until full payment is made for the produce" (Compl. at ¶¶ 8, 9 and Amended Compl. at ¶¶ 10, 11).[1]

After Root Brothers filed its first complaint, there were unsuccessful attempts to settle the matter; when those efforts failed defendants retained a new attorney, David Hoffman, Esq. on February 13, 2006 (Affidavit of Bruce Levinson, Esq., in Support of Plaintiff's Cross-Motion for Sanctions, sworn to October 16, 2006 ("Levinson Aff.") at ¶¶ 6, 7).  Mr. Hoffman promptly requested a two-week extension of time to respond to the complaint from plaintiff's counsel (Defendants' Memorandum of Law

---

[1]Plaintiff's complaint and amended complaint also alleged federal jurisdiction based on diversity of citizenship (Compl. at ¶ 1 and Amended Compl. at ¶ 1).  Plaintiff's complaints alleged that defendants Wan Hing Noodle, Inc. and New Mak Noodle Group, Inc. are both corporations with their principal places of business in New York (Compl. at ¶ 4 and Amended Compl. at ¶ 4). Plaintiff's complaints, however, did not allege the state citizenship of the partners of the Root Brother's partnership.  Since neither plaintiff's complaint nor its amended complaint alleged a sufficient factual basis for diversity jurisdiction, no jurisdiction can be found under 28 U.S.C. § 1332.  See, e.g., John Birch Soc'y v. National Broadcasting Co., 377 F.2d 194, 197 (2d Cir. 1967) ("diversity of citizenship must be apparent from the pleadings"); Neat-N-Tidy Co., Inc. v. Tradepower (Holdings) Ltd., 777 F. Supp. 1153, 1156 (S.D.N.Y. 1991) ("complete diversity must be apparent from the pleadings").

in Support of the Imposition of Sanctions ("Defendants' Sanctions Memo.") at 6 and Levinson Aff. at ¶ 7).  Plaintiff's attorney, Bruce Levinson, Esq., agreed to grant the extension on the condition that defendants waive their jurisdictional defenses (Levinson Aff. at ¶ 7).  Mr. Hoffman refused to agree to this condition (Levinson Aff. at ¶ 7), and defendants then success-fully sought an extension of time from the Court (February 13, 2006 Order, Docket Item 10).  Defendants subsequently moved to dismiss the complaint for lack of subject matter jurisdiction and failure to state a claim upon which relief could be granted (Notice of Motion, Docket Item 11).

On March 23, 2006 counsel appeared for oral argument before the Honorable Leonard B. Sand, United States District Judge.  Among other things, defendants argued that the court lacked subject matter jurisdiction because plaintiff's invoices lacked the notice required for federal jurisdiction under PACA (March 23, 2006 Hearing Transcript at 4-5).  Plaintiff did not respond to defendants' argument concerning the lack of notice but nevertheless maintained that its claim was appropriately brought in federal court (March 23, 2006 Hearing Transcript at 5-6).  At the conclusion of the argument, Judge Sand denied defendants' motion on the condition that plaintiff file an amended complaint within ten days that "set[s] forth the matters that you have set forth in your memorandum of law as to the identity of the plain-

tiff and the other matters" (March 23, 2006 Hearing Transcript at
6).  Judge Sand also permitted discovery to proceed and directed
that it be completed within 45 days of defendants' answer to the
amended complaint (March 23 Hearing Transcript at 7).

On March 31, 2006 Root Brothers filed its amended
complaint which again alleged federal court jurisdiction under
PACA, and that "Under the terms of the contract entered into by
the parties, payment was due ten days from the date of each
invoice.  Plaintiff preserved its interest in the PACA trust in
the amount of $76,126.13 . . ."  (Amended Compl. at ¶ 11).
Defendants filed their answer on April 8, and on April 10 served
plaintiff with several discovery requests, including a notice to
take the deposition of one of plaintiff's principals, Robin Root,
on Monday May 15, 2006 at 9:30 a.m.  (Notice of Deposition signed
by David Hoffman on April 10, 2006, annexed as Exhibit D to
Plaintiff's Cross-Motion for Sanctions ("Plaintiff's Cross-
Motion")).  During the week preceding May 15, 2006, plaintiff's
counsel "reached out to defendants' counsel by telephone, facsim-
ile and written letter [sic] to confirm defendants' desire to
proceed with the deposition" (Levinson Aff. at ¶ 11).  Defen-
dants' counsel did not respond to these inquiries, and on Friday
May 12 -- the last business day before the date scheduled for the
deposition -- plaintiff's counsel faxed to defendants' counsel a
letter confirming the scheduled deposition and informing him that

Mr. Root would arrive at his office at 9:30 Monday morning as
requested in defendants' notice (Letter to David J. Hoffman, Esq.
from Gregory Brown, dated May 12, 2006, annexed as Exhibit F to
Plaintiff's Cross-Motion).  The confirmation letter also informed
defendants' counsel that Mr. Root had purchased a plane ticket to
travel to the deposition.

        On Saturday May 13, defendants' counsel left plain-
tiff's counsel a voicemail message at counsel's office canceling
the deposition (Letter to Judge Sand from Bruce Levinson, Esq.,
dated May 15, 2006, annexed as Exhibit G to Plaintiff's Cross-
Motion ("Levinson May 15 Letter"); Letter to Judge Sand from
David J. Hoffman, Esq., dated May 27, 2006, annexed as Exhibit G
to Declaration of David J. Hoffman, Esq., in Support of Defen-
dants' Motion for Sanctions ("Hoffman May 27 Letter") ("Hoffman
Decl.")).  Plaintiff's counsel did not receive this message over
the weekend, and Mr. Root, who resides in Albion, flew to New
York City early Monday morning, arriving at the office of defen-
dants' counsel at approximately 9:30 a.m., as requested in
defendants' notice of deposition (Levinson May 15 Letter).  Mr.
Root, his attorney, and his attorney's associate, Gregory Brown,
waited for defense counsel at his office, unaware that defense
counsel had intended to cancel or postpone the deposition.  After
plaintiff's attorney sent his client back to the airport and
returned to his office, he discovered the voicemail message that

6

his adversary had left over the weekend (Levinson May 15 Letter).
According to Mr. Levinson's affidavit, Mr. Levinson, his associ-
ate and Mr. Root "waited close to three hours at Mr. Hoffman's
office" (Levinson Aff. at ¶ 12).  In Mr. Levinson's May 15 letter
to Judge Sand, he reported "We waited an hour and fifteen minutes
before giving up and sending our client back to the airport"
(Levinson May 15 Letter).  Plaintiff has not explained this
discrepancy in the claimed waiting times.

In his letter to Judge Sand attempting to justify his
non-appearance on May 15, defendants' counsel stated that he
canceled the deposition because "Mr. Levinson served his re-
sponses to Defendant's discovery requests on the eve of his
client's scheduled deposition.  Therefore, I did not received
[sic] his documents in time for a meaningful review" (Hoffman May
27 Letter at 1).  In the same letter, defendants waived the
deposition of Mr. Root, explaining that their review of the
documentary evidence confirmed that the transaction was not
subject to PACA. (Hoffman May 27 Letter at 1).

On May 12, 2006 plaintiff served its first Request for
Admissions.  Defendants' served their initial responses on June
13, 2006, accompanied by a letter from their attorney stating
"Enclosed please find defendants' responses to the requests for
admissions and interrogatories.  Some answers are incomplete and
I expect to supplement these answers" (August 8, 2006 Transcript

at 7).  Approximately one month later, on July 7, 2006, plain-
tiff's counsel wrote to the court and requested an informal
conference to address defendants' responses to the requests for
admissions.  Plaintiff accused defendants of "stonewalling" and
bad faith for providing "evasive" and "woefully incomplete"
responses (Letter to Judge Sand from Gregory Brown, dated July 7,
2006, annexed as Exhibit J to Hoffman Decl.).  Judge Sand re-
ferred the matter to me, and on August 8, 2006 I met with both
parties' counsel to discuss the matter.

        Immediately before the August 8 conference, defendants'
counsel provided the plaintiff with supplemental responses to the
May 12 requests to admit.  Counsel for plaintiff conceded at the
conference that the supplemental answers appeared sufficient
(August 8, 2006 Hearing Transcript at 4).  During the conference,
defendants' counsel explained that the delay in supplementing the
responses was due to the fact that Mr. Mak, the sole principal of
the corporate defendants, had been either out of the country or
out of the state, and Mr. Hoffman was not able to confer with him
until the day before the conference (August 8, 2006 Hearing
Transcript at 8-9).  Defendants' counsel also asserted that there
had been no informal attempts by plaintiff's counsel to resolve
the dispute before plaintiff sought the court's intervention
(August 8 Hearing Transcript at 8-10).

8

I reviewed defendants' initial responses to the May 12 requests to admit during the August 8 conference, and I concluded that the requests appeared to have been given individualized attention.  I also found that the responses appeared to conform to the Federal Rules for Civil Procedure and that the initial responses did not suggest bad faith, despite their repetitiveness (August 8, 2006 Hearing Transcript at 12-14).

On June 14, 2006, defendants moved for summary judgment and dismissal for lack of subject matter jurisdiction pursuant to Fed. R. Civ. Proc. 56 and 12(b)(1) respectively.  Defendants argued again that the court lacked subject matter jurisdiction over plaintiff's claim because:  (1) plaintiff could not show that it had provided defendants with the written notice required for jurisdiction under PACA; (2) defendants were not "dealers" subject to PACA; and (3) defendants fell within a statutory exception to PACA liability because they processed all produce "within the State where grown" and did not freeze or package the products on ice (Defendants' Memorandum of Law in Support of Motion for Summary Judgment and Dismissal at 1-3, annexed as Exhibit K to Levinson Aff., citing 7 U.S.C. § 499a(6)(c)).  On July 18 Plaintiff cross-moved for summary judgment arguing that plaintiff was entitled to prevail as a matter of law because: (1) defendants' non-responsive, unsigned answers to plaintiff's request for admissions must be deemed admissions; (2) there was

no genuine dispute that Peter Mak was an officer and owner of
defendant corporations and thus should be held personally liable;
(3) there was no genuine dispute that defendants purchased and
accepted produce from plaintiff for which defendant still owes
$76,126.13 (Memorandum of Law in Support of Plaintiff's Cross-
Motion for Summary Judgement, Docket Item 33 ("Plaintiff's
Summary Judgment Memo.") at 5-6, 9-11); and (4) plaintiff had
preserved its PACA trust rights "by providing under the terms of
the contract of sale that payment was due ten days from the date
of each invoice" (Plaintiff's Summary Judgment Memo. at 11).

      On August 31, 2006 Judge Sand heard oral argument on
the motions.  Plaintiff's counsel claimed that a provision in the
contract between plaintiff and defendants providing for different
times for payment satisfied the PACA notice requirement (August
31, 2006 Hearing Transcript at 3).  After hearing this argument,
Judge Sand quoted the mandatory language of the statute and
pointed out that "[n]umerous case make it clear that the inclu-
sion of a notice of intent in a writing furnished by the seller
to the purchaser is a prerequisite" to PACA jurisdiction.  After
plaintiff's counsel admitted that there was no writing containing
the statutory language, Judge Sand granted defendants' motion for
summary judgement and dismissed the action for lack of subject
matter jurisdiction (August 31, 2006 Hearing Transcript at 4-6).

III.  <u>Analysis</u>

A.  <u>Defendants' Claims</u>

Defendants move for sanctions pursuant to 28 U.S.C. § 1927 or the Court's inherent power against Bruce Levinson, Esq. and/or Root Brothers for "vexatious actions" that cost defendants $8,387.00 in attorney's fees and costs.  Defendants' claim for sanctions is based on plaintiff's filing their action in federal court when no colorable grounds for federal jurisdiction existed, on plaintiff's prior requests for sanctions and on plaintiff's denial of Mr. Hoffman's request for an extension of time to answer the original complaint.

Section 1927 provides that "[a]ny attorney . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorney's fees reasonably incurred because of such conduct."  "This provision 'imposes an obligation on attorneys throughout the entire litigation to avoid dilatory tactics' and applies only to attorneys.  The purpose of § 1927 is to deter unnecessary delays in ligation by penalizing attorneys personally."  <u>Nike, Inc. v. Top Brand Co.</u>, 216 F.R.D. 259, 275-76 (S.D.N.Y. 2003) <u>quoting</u> <u>Bowler v. U.S. Immigration & Naturalization Serv.</u>, 901 F. Supp. 597, 604 (S.D.N.Y. 1995); <u>see</u> <u>also</u>

Revson v. Cinque & Cinque, P.C., 221 F.3d 71, 78-79 (2d Cir.
2000).

A showing of bad faith is required to impose sanctions
under Section 1927.  Revson v. Cinque & Cinque, P.C., supra, 221
F.3d at 79; Oliveri v. Thompson, 803 F.2d 1265, 1273 (2d Cir.
1986) ("Imposition of a sanction under § 1927 requires a clear
showing of bad faith." (internal quotation omitted)).  "Like an
award made pursuant to the court's inherent power, an award under
§ 1927 is proper when the attorney's actions are so completely
without merit as to require the conclusion that they must have
been undertaken for some improper purpose such as delay."
Oliveri v. Thompson, supra, 803 F.2d at 1273 (citation omitted).

Courts may also punish improper conduct pursuant to an
inherent power that stems from the courts' need "to manage their
own affairs so as to achieve the orderly and expeditious disposi-
tion of cases."  Chambers v. NASCO, Inc., 501 U.S. 32, 43 (1991).
"One component of a court's inherent power is the power to assess
costs and attorney's fees against either the client or his
attorney where a party has 'acted in bad faith, vexatiously,
wantonly, or for oppressive reasons.'"  United States v. Int'l
Bhd. of Teamsters, Chauffers, Warehousemen & Helpers of America,
AFL-CIO, 948 F.2d 1338, 1345 (2d Cir. 1991) quoting F.D. Rich Co.
v. United States ex rel. Industrial Lumber Co., 417 U.S. 116,
129. (1974).  The Supreme Court cautioned the courts to exercise

this highly potent power "with restraint and discretion." <u>United States v. Int'l Bhd. of Teamsters</u>, <u>supra</u>, 948 F.2d at 1345 <u>quoting</u> <u>Chambers v. NASCO, Inc.</u>, <u>supra</u>, 501 U.S. at 44.

In order to impose sanctions against counsel under either Section 1927 or the court's inherent power, the court must find, with a "high degree of specificity," that the circumstances of their conduct constitute clear evidence that their claims were instituted and/or continued in bad faith. <u>Oliveri v. Thompson</u>, <u>supra</u>, 803 F.2d at 1277 <u>quoting</u> <u>Dow Chemical Pacific, Ltd. v. Rascator Maritime S.A.</u>, 782 F.2d 329, 344 (2d Cir. 1986). Bad faith may be found where the conduct at issue is "entirely without color" and was taken "for reasons of harassment or delay or for other improper purposes." <u>Oliveri v. Thompson</u>, <u>supra</u>, 803 F.2d at 1272. A claim has color "when it has some legal and factual support, considered in light of the reasonable beliefs of the individual making the claim." <u>Revson v. Cinque & Cinque, P.C.</u>, <u>supra</u>, 221 F.3d at 79, <u>quoting</u> <u>Nemeroff v. Abelson</u>, 620 F.2d 339, 348 (2d Cir. 1980) (<u>per</u> <u>curiam</u>). Thus, for a court to impose sanctions under Section 1927 or the court's inherent powers, the court must find "clear evidence that (1) the offend-ing party's claims were entirely meritless and (2) the party acted for improper purposes." <u>Revson v. Cinque & Cinque, P.C.</u>, <u>supra</u>, 221 F.3d at 79, <u>quoting</u> <u>Agee v. Paramount Communications, Inc.</u>, 114 F.3d 395, 398 (2d Cir. 1997).

Defendants' claims for sanctions against plaintiff and its counsel fails to meet either of these prongs.

Defendants allege that plaintiff's claim was meritless because PACA and applicable case law clearly demonstrate that in order to state a claim under PACA and to invoke the subject matter jurisdiction of a federal court, a seller must have preserved its interest in the PACA trust by providing notice in one of the two ways explicitly described in the statute.  Defendants assert that plaintiff and counsel knew that plaintiff never provided the required notice, yet proceeded in federal court anyway (Defendants' Sanctions Memo.).  Defendants complain that even after they informed plaintiff's counsel of their client's failure to provide notice and preserve its interest in a PACA trust, plaintiff's amended complaint disingenuously alleged that "Plaintiff preserved its interest in the PACA trust . . ." (Amended Compl. at ¶ 11).  Defendants contend that this allega-tion was "manifestly inserted in bad faith . . . in the face of the uniform authority requiring written notice by the means identified in the PACA statute" (Defendants' Reply Memorandum of Law in Support of the Imposition of Sanctions and in Opposition to Plaintiff's Motion at 3).  Furthermore, defendants argue plaintiff's counsel's statements during the August 31, 2006 oral argument demonstrate that plaintiff's counsel knew their client had not given the statutorily required notice and that the court

14

lacked subject matter jurisdiction (Defendants' Sanctions Memo.
at 5).

      In response to this allegation, plaintiff's counsel
asserts that plaintiff was not pressing its claim in bad faith
but relied on an alternative argument regarding the PACA notice
requirement.  Specifically, plaintiff's counsel states that
plaintiff was relying "on a reasonable interpretation of 7 C.F.R.
§ 46.46(e) to come to the conclusion that it has provided defen-
dants with notice" (Levinson Aff. at ¶ 22).  In his motion
papers, plaintiff's counsel argues that plaintiff "preserved its
trust rights by providing under the terms of the contract of sale
that payment was due ten days from the date of each invoice" and
that PACA "contemplates that such notice is permissible" (Plain-
tiff's Summary Judgment Memo. at 11 <u>citing</u> 7 C.F.R. § 46.46(e)).

      Defendants' sanctions motion is unusual because it is
not based on the lack of merit of the underlying claim, but
solely on the fact that the plaintiff asserted its claim in the
wrong court.  None of defendants' papers alleges, let alone
establishes clear and specific evidence, that plaintiff fabri-
cated its claims that it delivered goods to defendants for which
defendants did not pay.  Thus, there is not a scintilla of
evidence that plaintiff commenced a meritless action for an
improper purpose.  Because courts should exercise restraint in
awarding sanctions and sanctions should be reserved for extreme

cases, see e.g., Mone v. C.I.R., 774 F.2d 570, 574 (Section 1927 sanctions should be awarded "with great caution, so as not to stifle enthusiasm or chill creativity that is the very lifeblood of law."); Brown v. Sara Lee Corp., 98 Civ. 1593 (JSR), 1998 WL 809518 at *13-*14 (S.D.N.Y. Nov. 19, 1998) (declining to impose sanctions, even where plaintiffs' counsel "cavalier[ly]" based a claim on a "re-casting of the very acts by defendants that previously [had] been found insufficient to support any kind of federal claim"), I conclude an award of sanctions in this matter is unwarranted.  At its essence the Root Brothers' claim is a colorable claim to a collect a debt owed by the defendants; it is not "entirely meritless."  The fact that Root Brothers brought the claim in the wrong forum, whether or not plaintiff or its attorneys should have known that there was a fatal jurisdictional defect, is, I believe, insufficient to impose sanctions under § 1927 or the court's inherent powers.

There is also no evidence supporting the second prong of the test for imposition of sanctions -- that plaintiff acted for improper purposes, such as harassment or delay, in bringing its suit in federal court.  Defendants allege that because PACA "creates personal liability for corporate officers such as Defendant Peter Mak, Plaintiff asserted PACA liability as an in

terrorem device to attempt to force a settlement"[2]  (Defendants'
Sanctions Memo. at 1-2).  However, legal theories also exist
under state law under which corporate officers can be held
personally liable for unpaid corporate debts.  See e.g., Lasidi,
S. A. v. Financiera Avenida, S. A., 73 N.Y.2d 947, 950, 538
N.E.2d 332, 334, 540 N.Y.S.2d 980, 982 (1989); Hollow Road Farms,
Inc. v. Quo Vadis Intern., LLC, 31 A.D.3d 1023, 1023-24, 819
N.Y.S.2d 338, 338 (3d Dep't 2006); James v. Loran Realty I to IV
Corp., 22 A.D.3d 291, 292, 802 N.Y.S.2d 50, 51 (1st Dep't 2005).
Thus, defendants have not shown that plaintiff was attempting to
gain some material collateral advantage by asserting its claim in
federal court as opposed to state court.

        Defendants' remaining arguments in support of their
motion for sanctions can be quickly dispatched.  To the extent
defendants are claiming that plaintiff wasted the court's time by
objecting to defendants' responses to plaintiff's requests to
admit, defendants' motion is without merit.  Defendants admitted
in the cover letter accompanying their responses that the re-
sponses were deficient (August 8, 2006 Transcript at 7), and it
was not until either the day before the conference or the day of
the conference that defendants rectified these deficiencies.

_____

        [2]An individual who is in a position to control the assets of
a PACA trust and fails to preserve them may be held personally
liable to the trust beneficiaries for breach of a fiduciary duty
under PACA § 5(c)(2), 7 U.S.C. § 499e.  Coosemans Specialties,
Inc. v. Gargiulo, 485 F.3d 701, 705-06 (2d Cir. 2007).

This chronology strongly suggests that defendants remedied the deficiencies in their responses to the requests to admit solely because plaintiff sought the court's intervention.

Finally, defendants' contention that plaintiff's refusal to consent to an extension of time to respond to the complaint justifies an award of sanctions is frivolous on its face.  Although I appreciate that extensions of time to answer or move are routinely granted by counsel in this District, until the Federal Rules of Civil Procedure are amended, such extensions remain a matter of grace, not right.  The practice of law would quickly deteriorate into total chaos if insistence on compliance with the Federal Rules of Civil Procedure became sanctionable conduct.  See generally Mohasco Corp. v. Silver, 447 U.S. 807, 826 (1980) ("[I]n the long run, experience teaches that strict adherence to the procedural requirements specified by the legis-lature is the best guarantee of evenhanded administration of the law.")

Plaintiff's claims were neither entirely meritless nor so lacking in legitimate purpose to support a conclusion that plaintiff and its counsel acted in bad faith.  Thus, defendants' motion for sanctions is denied.

B.   <u>Plaintiff's Cross-Motion</u>

Plaintiff cross-moves for an award of sanctions against defendants and their counsel, David J. Hoffman, Esq., based on: (1) defendants' failure to proceed with the deposition of Robin Root that defendant noticed for May 15, 2006, (2) defendants' allegedly deficient answers to plaintiff's May 12, 2006 requests for admissions, (3) defendants' repetition of arguments in their first and second motions to dismiss, and (4) the organization of arguments in the memorandum of law accompanying defendants' second motion to dismiss and for summary judgment.

1.   Plaintiff's Request for
      Sanctions Pursuant to
      Rule 30(g)(1)

Rule 30(g)(1) of the Federal Rules of Civil Procedure provides "If the party giving the notice of the taking of a deposition fails to attend and proceed therewith and another party attends in person or by attorney pursuant to the notice, the court may order the party giving notice to pay to such other party the reasonable expenses incurred by that party and the party's attorney, including reasonable attorney's fees."

"Courts allow the award of attorney's fees and expenses where the party noticing the deposition fails to attend and does not deliver sufficient notice of cancellation to the other." <u>Donini Intern., S.P.A. v. Satec (U.S.A.), LLC</u>, 03 Civ. 9471

19

(CSH), 2006 WL 695546 at *7 (S.D.N.Y. Mar. 16, 2006).  In this
case, defendants noticed the deposition of Robin Root but did not
proceed with it.

Defendants make two arguments in opposition to plain-
tiff's motion for sanctions.  First, defendants claim that
plaintiff was responsible for cancellation of the deposition
because plaintiff did not produce documents necessary for the
deposition until a few days before the deposition.  This argument
in unpersuasive.  Plaintiff's counsel had no way of knowing how
defendant would conduct the deposition or what documents he would
use.  Moreover, if defendants' counsel was not in a position to
proceed with the deposition, for whatever reason, it was incum-
bent upon him to provide timely notice of that fact.

As a fallback, defendants argue that their telephonic
notice to plaintiff's counsel's office on Saturday, May 13 was
sufficient to cancel the deposition.  This argument is also
unconvincing for the simple reason that it is generally known
that the vast majority of individuals do not check office voice-
mails on weekends and holidays.

Because defendants did not provide plaintiff sufficient
notice of their intent to cancel Robin Root's deposition and
because defendants have failed to provide sufficient justifica-
tion for their last-minute cancellation, I find that plaintiff is
entitled to an award of sanctions pursuant to Rule 30(g)(1) for

20

the reasonable expenses of attending the deposition, including reasonable attorney's fees.

Plaintiff requests an award in the total amount of $2,017.90 for expenses resulting from the canceled deposition. Plaintiff seeks $433.65 for Mr. Root's out-of-pocket expenses to travel to New York City and return home (Letter to Judge Sand from Bruce Levinson dated May 17, 2006, annexed as Exhibit H to Levinson Aff. "Levinson May 17 Letter").[3]  Plaintiff also requests attorney fees totaling $1,584.25 for time spent by Mr. Levinson and his associate to cover the deposition and to bring the matter to the attention of the court.  This amount includes fees for the time Mr. Levinson and his associate spent waiting on May 15, and the transportation costs incurred to attend the deposition.  Since it was only necessary to have one attorney accompany the witness to the deposition, reasonable attorney's fees should be limited to the fees and expenses of one attorney's attendance.  Therefore, Mr. Brown's fees for attending the May 15 deposition, namely $591.50, are not recoverable.  In addition, since plaintiff never explained the discrepancy in its reports of how much time plaintiff's counsel and Robin Root spent waiting at defense counsel's office on May 15 (i.e. an hour and fifteen minutes versus three hours), I award fees for the lesser amount

---

[3]Mr. Root's expenses include airfare, round trip travel between his home in Albion and the airport in Rochester, and the cost of a taxi cab between JFK airport and Mr. Hoffman's office.

of time, namely $410.25 ($406.25 in legal fees and $4.00 for
transportation).   I also award plaintiff fees totaling $176.25
for time spent drafting and revising its May 15, 2006 letter to
Judge Sand, requesting sanctions for the aborted deposition
(Levinson May 17 Letter).   Thus, plaintiff is entitled to a total
award of $1,020.15 ($433.65 + $410.25 + $176.25).

      2.   Plaintiff's Requests for
          Sanctions Pursuant to Rule
          11(c), 28 U.S.C. § 1927, and
          the Court's Inherent Power

In addition to the fees and costs associated with the
aborted deposition, plaintiff requests sanctions against defen-
dants and their counsel pursuant to Rule 11 of the Federal Rules
of Civil Procedure, 28 U.S.C. § 1927, and the court's inherent
power, as a result of defendants' allegedly deficient responses
to plaintiff's May 12 requests for admissions.   Plaintiff also
claims that defendants should be sanctioned because parts of
their memorandum to dismiss the first complaint are identical to
arguments made in defendants' memorandum to dismiss or obtain
summary judgment from plaintiff's amended complaint.   Finally,
plaintiff argues that defendants should be sanctioned because
defendants' memorandum of law in support of their motion to
dismiss and for summary judgment did not differentiate between
the arguments made in support of each form of relief (Levinson
Aff. at ¶ 20).

Again, the standard for sanctions pursuant to Section 1927 and the court's inherent power is high, requiring "clear evidence that (1) the offending party's claims were entirely meritless and (2) the party acted for improper purposes." Revson v. Cinque & Cinque, P.C., supra, 221 F.3d at 79, quoting Agee v. Paramount Communications, Inc., supra, 114 F.3d at 398.

Rule 11(c) of the Federal Rules of Civil Procedure allows a court to impose sanctions for violations of Rule 11(b) of the Federal Rules of Civil Procedure. Rule 11(b) is violated when an attorney submits a pleading, motion or other paper for an improper purpose, or knowingly presents a frivolous claim or legal argument. Ball v. A.O. Smith Corp., 451 F.3d 66, 70 (2d Cir. 2006). The purpose of Rule 11(c) is to prevent abuse of the adversary system. See 1 Michael Silberberg & Edward M. Spiro, Civil Practice in the Southern District of New York § 5:8 (2d ed. 2005).

The Court of Appeals has noted,

> Rule 11 sanctions are a coercive mechanism, available to trial court judges, to enforce ethical standards upon attorneys appearing before them, while being careful not to rein in zealous advocacy. Although the imposition of sanctions is within the province of the district court, "any such decision [should be] made with restraint and discretion." Schlaifer Nance & Co., Inc. v. Estate of Warhol, 194 F.3d 323, 334 (2d Cir. 1999).

<u>Pannonia Farms, Inc. v. USA Cable</u>, 426 F.3d 650, 652 (2d Cir. 2005).

      "The mental state applicable to liability for Rule 11 sanctions initiated by motion is objective reasonableness, <u>i</u>.<u>e</u>., liability may be imposed if the lawyer's claim to have evidentiary support is not objectively reasonable." <u>In re Pennie & Edmonds LLP</u>, 323 F.3d 86, 90 (2d Cir. 2003); <u>see</u> <u>Ted Lapidus, S.A. v. Vann</u>, 112 F.3d 91, 96 (2d Cir. 1997); <u>O'Brien v. Alexander</u>, 101 F.3d 1479, 1490. (2d Cir. 1996).

      To the extent plaintiff's claim is based on defendants' first set of responses to plaintiff's requests for admissions, it is frivolous.  As the record reflects this issue was not only already raised before me, but was the subject of a conference at which I found the responses <u>not</u> to be deficient.

      I fail to see how the rest of the conduct about which plaintiff complains comes even close to meeting any of the standards for imposition of sanctions pursuant to Rule 11, Section 1927 or the court's inherent powers.  Defendant prevailed on its motion to dismiss.  Plaintiff's notion that defendants' successful memorandum of law is somehow sanctionable is just as absurd as defendants' notion that plaintiff should be sanctioned for insisting on compliance with the Federal Rules of Civil Procedure.  Finally, deficiencies in counsel's style of writing

or the organization of a memorandum of law are simply not
sufficient bases for sanctions.

IV.   Conclusion

      For the foregoing reasons, defendants' motion for
sanctions against plaintiff and counsel under 28 U.S.C. § 1927
and the inherent powers of the court is denied; plaintiff's
cross-motion for sanctions against defendant is granted to the
extent that plaintiff is awarded the sum of $1,020.15 against
defendants and their counsel as a result of defendants' failure
to proceed with the deposition of Robin Root.  Defendants and
their counsel shall pay this sum within ten (10) days of the date
of this Order.  In all other respects, plaintiff's cross-motion
is denied.

Dated:    New York, New York
          September 25, 2007

                         SO ORDERED

                         HENRY PITMAN
                         United States Magistrate Judge

Copies transmitted to:

Bruce Levinson, Esq.
Gregory Brown, Esq.
Law Offices of Bruce Levinson, Esq.
747 Third Avenue
New York, New York 100017-2803

David J. Hoffman, Esq.
29 Broadway, 27th Floor
New York, New York 10006